IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 11-cv-1181-AP**

**GEORGE W. BARRIE**,

     Plaintiff,

v.

**U.S. DEPARTMENT OF LABOR,**

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Kane, J.

From the advent of the Manhattan Project, the United States has invested heavily in the design and development of a sizable nuclear arsenal.  Although terrible in power, these weapons are often credited with winning two wars, World War II and the Cold War.  These weapons were not, however, developed without a significant cost; many of the civilian contract employees responsible for their design and construction were exposed to significant quantities of radiation and/or toxins, which led to an increased incidence of radiation and toxin-related illnesses.

Although state workers' compensation plans should have provided adequate compensation for any occupational injuries suffered by these individuals, the Department of Energy's longstanding practice of litigating occupational illness claims deterred most employees from seeking compensation.  42 U.S.C. § 7384(a)(4).  In recognition of the great debt owed these individuals and the inadequate compensation for their disproportionately born burden, Congress passed the Energy Employee Occupational Illness Compensation Program Act of 2000

1

("EEOICPA") to provide a compensation mechanism for men and women suffering injury related to their employment in the nuclear defense industry.  42 U.S.C. § 7384 *et seq.*

Plaintiff George W. Barrie, a former contract employee of the Department of Energy, worked as a contract machinist at the Rocky Flats Plant in Golden, Colorado from 1982 to 1989. *Barrie v. U.S. Dep't of Labor*, 597 F. Supp. 2d 1235, 1237 (D. Colo. 2009).  He claims to have suffered numerous illnesses resulting from his exposure to toxic compounds during the course of his employment, and he filed a variety of claims with the Department of Labor for compensation under the EEOICPA.  *Id.*  Most relevant to the instant challenge, he filed a wage-loss claim under Part E of the EEOICPA, claiming that his exposure to toxins at Rocky Flats caused atrophic gastritis, a condition that precludes him from seeking employment.[1]  Although his wage-loss claim was denied by the Department of Labor, that decision was reversed and remanded to the agency for further proceedings.  *Id.* at 1245.

On remand, the Department of Labor again denied Mr. Barrie's wage-loss claim, asserting that the medical evidence of record was insufficient to establish that he had suffered a compensable loss of wages.  *See* Final Appeals Board's Final Decision (doc. 4-2) at 13.  Mr. Barrie timely filed a request for reconsideration of that decision, and on March 3, 2011, the Final Appeals Board denied his request for reconsideration.  *See* Final Appeals Board's Denial of Request for Reconsideration (doc. 4-3) at 3.  After his request to re-open his claim was denied, on May 3, 2011, Mr. Barrie filed the instant action seeking review of the Department of Labor's

---

[1]  Under the terms of the EEIOCPA, Part E provides compensation and medical benefits for Department of Energy contractor and subcontractor employees whose illnesses were caused by exposure to any toxic substance while working at a Department of Energy facility.

denial of his wage-loss claim.

This matter is currently before me on Defendant the Department of Labor's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1).[2]  For the reasons stated below, the Department of Labor's motion is GRANTED.

## ANALYSIS

The Department of Labor argues that I lack jurisdiction because Mr. Barrie's complaint was filed beyond the sixty-day period for filing a petition for review of a final decision by the Department of Labor.  *See* 42 U.S.C. § 7385s-6(a) (a plaintiff may seek review of the Department of Labor's denial of his wage-loss claim by filing a request for review "within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside . . ."). Neither party disputes that Mr. Barrie's complaint was filed 61 days after the Final Appeals Board denied his request for reconsideration.  Instead, Mr. Barrie argues that his claim is not time-barred because: (1) the agency's action did not become "final" until his request to reopen his claim was denied on April 12, 2011 and (2) the statutory deadline for filing his notice of appeal is not jurisdictional and may be equitably tolled.  I address each argument in turn.

### *Finality of the Agency's Decision*

The Department of Labor's regulations provide that when a claimant files a request for reconsideration of the Final Appeals Board's denial of his claim and that request is denied, "the [Final Appeals Board] decision that formed the basis for the request will be considered 'final'

---

[2]  In its Motion to Dismiss, the Department of Labor also argued that dismissal was appropriate under Fed. R. Civ. P. 12(b)(5).  Mr. Barrie has, however, cured the deficiency in his service of the government, and this argument is MOOT.

upon the date the request is denied." 20 C.F.R. § 30.319(c)(2).[3]

Mr. Barrie argues that the Final Appeals Board's denial of his claim was not final until the Department of Labor denied his request to reopen his claim, at which point his administrative remedies were effectively exhausted.  Although in some cases the exhaustion of administrative remedies is a prerequisite to filing a petition for review of an agency's action, the Administrative Procedures Act, "by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).  The EEOICPA does not require a plaintiff to exhaust his administrative remedies in order to seek judicial review, and I may not imply one.  Simply put, Mr. Barrie's request to reopen his claim is irrelevant to the finality of Defendant's denial of his wage-loss claim and his ability to seek judicial review;[4] his belief to the contrary does not alter the statutory and regulatory framework.  Plaintiff's claim became final on March 3, 2011, when the Final Appeals Board denied his request for reconsideration.

*Nature of the Statutory Deadline*

Even though the statutory deadline expired before Plaintiff filed his complaint, he argues that the deadline may be tolled because the deadline is not jurisdictional.  Although the Supreme Court has repeatedly held that statutory deadlines for filing suit are jurisdictional in nature, it has not consistently applied this rule, at times reaching the opposite conclusion.  *Compare Stone v.*

---

[3] Plaintiff has not challenged this regulation, and absent any evidence that it is arbitrary, capricious, or manifestly contrary to the statute I must afford it deference.  *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984).

[4] Further underscoring this conclusion, Plaintiff could not have filed a request to reopen his claim until the Final Appeals Board's decision was "final".  20 C.F.R. § 30.320(a).

*INS*, 514 U.S. 386, 405 (1995) ("Judicial review provisions . . . are jurisdictional in nature and must be construed with strict fidelity to their terms"), *and Missouri v. Jenkins*, 495 U.S. 33, 45 (1990) (statutory provisions specifying the timing of review are "mandatory and jurisdictional"), *with Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) ("time prescriptions, however emphatic, are not properly typed jurisdictional").  Unfortunately, the Court's attempts to reconcile its previous rulings have proven, for the most part, ineffective.  It is with this uncertainty in mind that I wade into the precedential abyss.

The parties focus their argument primarily on the Court's two most recent relevant decisions: *Bowles v. Russell* and *Henderson v. Shinseki*.  In *Bowles*, a sharply divided Court invoked the jurisdictional nature of statutory time limits in denying a defendant's right to appeal from a district court's denial of his petition for habeas corpus review. 551 U.S. 205, 210-13 (2007).  The Court reached this seemingly harsh result even though the defendant's failure to comply with the statutory deadline resulted directly from the district court's error.  In a vigorous dissent, Justice Souter questioned the majority's abandonment of the Court's recent efforts to "confine jurisdictional rulings to jurisdiction proper."  *Id.* at 216.  Quite presciently, Justice Souter observed that "limits on the reach of federal statutes, even nontemporal ones, are only jurisdictional if Congress says so . . . ."  *Id.*

Astonishingly, and somewhat confoundingly, a unanimous Court seemed to adopt Justice Souter's dissenting opinion in *Bowles* four years later in *Henderson*. Echoing Justice Souter, the Court noted its attempt in recent cases "to bring some discipline to the use of [the term "jurisdictional"]."  *Henderson*, 131 S. Ct. 1197, 1202 (2011).  Begging the question, the Court noted that "a rule should not be referred to as jurisdictional unless it governs a court's

adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Id.* Although the court did not fully retreat from its seemingly unequivocal holding in *Bowles*, it did recognize an exception for rules properly classified as "claim-processing rules." *Id.* at 1203. Such rules, the Court stated, are those which "seek to promote the orderly progress of litigation by requiring that the parties take procedural steps at certain specified times." *Id.* The Court noted, however, that its own classification of a rule is not dispositive; "Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule." *Id.*

According to the Court, in order to determine whether a rule is truly jurisdictional, reviewing courts should ascertain whether "there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" The Court's enclosure of the word clear with quotation marks is telling; seldom does Congress reveal its intent with any degree of clarity. In recognition of the familiar challenge of discerning Congressional intent from the text of a statute, the Court noted that "Congress, of course, need not use magic words in order to speak clearly on this point. '[C]ontext, including this Court's interpretation of similar provisions in many years past, is relevant.'" *Id.* (quoting *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248 (2010)).

Unsurprisingly, the parties urge divergent interpretations of the Court's decision in *Henderson*. Mr. Barrie argues that *Henderson* loosens the stringent jurisdictional restrictions imposed in *Bowles*, requiring me to consider the 60-day filing deadline within the context of the EEOCIPA as a whole in order to determine whether Congress intended the filing deadline to be jurisdictional. The Department of Labor, on the other hand, argues that *Henderson* and *Bowles* are readily distinguishable, in essence representing the culmination of two separate lines of cases. According to the Department of Labor, the key distinction between these cases is the fact that the

review provision at issue in *Henderson* limited a claimant's right to appeal an adverse decision to

an Article I tribunal, while *Bowles* addressed Congressional limits on the right to appeal an

adverse decision to an Article III court.  Because the EEOICPA provides for judicial review of

adverse decisions by Article III courts, the Department of Labor agues that the *Bowles* line of

cases governs Mr. Barrie's challenge and *Henderson* is inapposite.

Although I am sympathetic to Mr. Barrie's situation, the distinction posited by the

Department of Labor is well-taken.  Indeed, it provides the only discernible means of reconciling

the Court's otherwise haphazard jurisprudence.  The distinction between Article I tribunals and

Article III courts is not, however, merely one of convenience.  In fact, it is essential to the

separation of powers dictated by the Constitution.  As Justice Thomas noted in *Bowles*:

> Within constitutional bounds, Congress decides what cases the federal courts
> have jurisdiction to consider. Because Congress decides whether federal courts
> can hear cases at all, it can also determine when, and under what conditions,
> federal courts can hear them. Put another way, the notion of "subject-matter"
> jurisdiction obviously extends to classes of cases falling within a court's
> adjudicatory authority, but it is no less "jurisdictional" when Congress prohibits
> federal courts from adjudicating an otherwise legitimate "class of cases" after a
> certain period has elapsed from final judgment.

551 U.S. at 213.[5]  The EEOICPA requires that a claimant appeal an adverse decision to an

Article III court within 60 days after the date on which the Final Appeals Board's decision

becomes final.  Accordingly, *Bowles* governs Mr. Barrie's appeal, and the Court's decision

leaves no room for doubt.  The EEOICPA's 60-day filing deadline is jurisdictional.  Because Mr.

Barrie filed his claim after the expiration of the 60-day filing deadline, his claim is time-barred

and I lack jurisdiction over his complaint.

---

[5]  The more relaxed approach taken by the Court in *Henderson* is most likely due to the
fact that there are no similar constitutional limitations on congressionally created Article I
tribunals.

CONCLUSION

I recognize the harshness of denying Mr. Barrie relief because he missed the statutorily imposed filing deadline by one day.  This result is, however, dictated by the separation of powers inherent in the Constitution.  Mr. Barrie's failure to timely file his complaint defeats jurisdiction in this matter, and I may not apply equitable doctrines in circumvention of this express Congressional limitation on my jurisdiction.  Accordingly, Defendant's Motion to Dismiss is GRANTED.  All parties shall bear their own fees and costs.

Dated: August 17, 2011                     BY THE COURT:

                                           **s/John L. Kane**
                                           Senior U.S. District Judge

8